G. C. CUTHRELL v. MILWAUKEE MECHANICS INSURANCE COMPANY OF MILWAUKEE, WISCONSIN.

(Filed 19 September, 1951.)

1. Insurance § 19a—

The word "completed" as used in describing the term of a builder's risk fire policy must be construed in its plain and ordinary sense, and means brought to an end or to a final and intended condition.

2. Insurance § 23d—

The evidence in this case introduced by plaintiff insured *held* sufficient to show that plaintiff's building had not reached that stage in its construction when it could be put to the use for which it was intended at the time it was destroyed by fire, and therefore was sufficient to withstand insurer's motion to nonsuit based upon the theory that plaintiff's evidence was insufficient to show that at the time of the fire the term of the builder's risk policy sued on had not terminated under its provision that its term should not extend beyond the completion of the building.

3. Insurance § 19a—

The word "occupied" as used in describing the term of a builder's risk fire policy must be construed in its plain and ordinary sense, and means

a continuing tenure for a reasonable time, and does not embrace a mere transient or trivial use.

**4. Insurance § 23d—**

Plaintiff insured's evidence that he permitted his building covered by the builder's risk policy sued on to be used gratuitously on one occasion for one dance, kegs and building materials being moved to one side of the floor for the occasion, and the roof garden, restaurant, picnic terrace, and other parts of the building not being used prior to the fire which destroyed the building, *is held* sufficient to withstand insurer's motion to nonsuit based upon the theory that insured's evidence was insufficient to show that the policy had not terminated under its provision that the term should not extend beyond the time the building was occupied in whole or in part.

**5. Trial § 22b—**

On motion to nonsuit, defendant's evidence in conflict with that of plaintiff is not to be considered.

**6. Insurance § 25b—**

Insurer is not entitled to introduce evidence supporting its contention of cancellation or termination of the policy on any ground not supported by allegation.

VALENTINE, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Morris, J.,* and a jury, at February Term, 1951, of PASQUOTANK.

Civil action to recover on a standard fire insurance policy with builder's risk clause attached as a rider.

Certain events antedating the litigation are not in dispute. They are stated in the numbered paragraphs set forth below:

1. On 26 January, 1950, the plaintiff, G. C. Cuthrell, was engaged in constructing a building upon land owned by him at Elizabeth City Beach on the Pasquotank River in Camden County, North Carolina.

2. On that day the defendant, Milwaukee Mechanics Insurance Company of Milwaukee, Wisconsin, a fire insurance corporation, and the plaintiff entered into a contract whereby the defendant issued to the plaintiff its policy No. 319 insuring the building against fire in the sum of $3,000.00, and whereby the plaintiff paid the defendant $34.44 as the premium for the policy.

3. The policy was in the standard form prescribed by G.S. 58-176 for fire insurance policies issued on property in North Carolina. In the body of the policy, it was stated that the term of the policy was one year beginning on 26 January, 1950. Attached to the policy was a rider, called a "builder's risk . . . form," containing this language: "Termination of contract. It is a condition of this insurance that this policy covers the property described herein only while the building is in process of erection

and completion and that the building herein is unoccupied and not completed and that when occupied in whole or in part, this company shall be notified and rate adjusted, except that if the building is to be a manufacturing plant, machinery may be set up and tested."

4. On 5 May, 1950, the plaintiff's building was totally destroyed by fire.

5. The plaintiff forthwith furnished notice and proofs of loss to defendant, which denied liability on the policy and tendered to plaintiff $25.55 as an unearned premium on the policy computed as of 29 April, 1950. The plaintiff declined the tender, and brought this action.

The answer of the defendant denies liability to plaintiff solely upon this ground: "That the building destroyed by fire as alleged by the plaintiff was completed and/or occupied in whole or in part, within the meaning of policy No. 319, on or before April 29, 1950, and the policy then became of no further force and effect."

When the cause was heard in the court below, the plaintiff insisted that the builder's risk clause had the effect of making the provisions of the standard policy form prescribed by G.S. 58-176 more restrictive, and in consequence was expressly invalidated by G.S. 58-177. The defendant countered with the claim that the clause merely defined the duration of the risk, and by reason thereof was consistent with the provisions of the standard policy form.

The presiding judge upheld the defendant's position and adjudged that the builder's risk clause was valid, that it limited the term of one year stated in the body of the policy, and that by its terms the policy became inoperative when the building was completed or when the building was occupied in whole or in part. Moreover, the judge ruled that the burden was on the plaintiff to prove that the policy was in force at the time of the fire, and that such burden obligated him to establish both of these propositions by the greater weight of the evidence: (1) That the building had not been completed; and (2) that the building had not been occupied either in whole or in part by the plaintiff or anyone acting for or under him at any time before its destruction.

Both parties offered evidence for the avowed purpose of establishing their respective contentions as to these matters. The portions of the testimony essential to an understanding of the legal questions arising on the appeal are summarized in the opinion which follows this statement of facts.

These issues arose on the pleadings, and were submitted to the jury:

1. Was the defendant's Policy No. 319 in full force and effect on 5 May, 1950, the date of the fire?

2. What damages, if any, is plaintiff entitled to recover of the defendant?

The jury answered the first issue "Yes," and the second issue "$3,000.00." The trial judge entered judgment for plaintiff for $3,000.00 with interest from 5 July, 1950, and the defendant appealed, assigning errors.

*J. Henry LeRoy for plaintiff, appellee.*
*Wilson & Wilson for defendant, appellant.*

ERVIN, J. Diligent search fails to uncover any North Carolina case involving the legality of a builder's risk clause similar to that in suit. Happily no occasion arises on the present record for us to determine the validity of the clause, or to make an independent adjudication as to its precise effect on the provisions of the standard policy form if it be valid. For the purpose of this particular decision only, we shall take it for granted without so adjudging that the builder's risk clause is valid and that the trial judge construed it aright in the court below. Inasmuch as the defendant admitted the issuance of the policy by it and the payment of the premium thereon by the plaintiff, we have grave misgivings as to the soundness of the ruling of the trial judge imposing on plaintiff the burden of showing that the insurance had not been terminated under the provisions of the builder's risk clause at the time of the loss. Notwithstanding this, however, we will assume without so deciding that such ruling was correct.

When it is interpreted in the light of these assumptions, the record presents for determination the question whether the evidence offered by the plaintiff at the trial is sufficient to support both of these propositions: (1) That the building had not been completed at the time of the fire; and (2) that the building had not been occupied either in whole or in part by the plaintiff or anyone acting for or under him at any time before its destruction.

The inquiry is raised by assignments of error based on the refusal of the trial judge to dismiss the action upon a compulsory nonsuit, or to grant the defendant's prayers for a directed verdict in its favor.

The terms "completed" and "occupied" are to be taken and understood in their plain and ordinary sense. *Crowell v. Insurance Co.,* 169 N.C. 35, 85 S.E. 37; *Powers v. Insurance Co.,* 186 N.C. 336, 119 S.E. 481.

We shall first consider whether the plaintiff's evidence is sufficient to show that the building had not been completed at the time of the fire. The word "completed" means brought to an end or to a final or intended condition. 15 C.J.S. 665. A building is completed if, and only if, it has reached that stage in its construction when it can be put to the use for which it is intended. *Daniel v. Casualty Co.,* 221 N.C. 75, 18 S.E. 2d

819; *Property Owners' Materials Co. v. Byrne* (Mo. App.), 176 S.W. 2d 650.

When the plaintiff's evidence on this aspect of the case is taken in the light most favorable to him, it tends to show the things stated in the next paragraph.

The building was designed for use for restaurant and recreation purposes. It was to contain a dining room with floor space for dancing; a picnic terrace with built-in tables for dining surmounted by a roof garden with a masonry floor for dancing; a kitchen; a storage room; and a bath house. At the time of the fire, the building as planned was incomplete in these respects: Braces, doors, inside molding, and partitions had not been placed in various parts of the structure; only two-thirds of the building had been covered by the first of two coats of paint; the bath house, the kitchen, the outside of the building, the picnic terrace, and the roof garden lacked electrical wiring; the cabinet work had not been done in the storage room; the cooking fixtures and plumbing "had not been set up" in the kitchen; the lockers, plumbing, and shower equipment had not been installed in the bath house; the walls of the picnic terrace had not been erected, and built-in tables had not been put there; the supports of the roof garden and the banister on the stairway leading to it had not been finished; and the masonry floor had not been laid on the roof garden.

Since this evidence indicates that at the time of the fire the plaintiff's building had not reached that stage in its construction when it could be put to the use for which it was intended, it is sufficient to establish the proposition that the building had not been completed at the time of its destruction.

The term "occupied" implies a continuing tenure for a period of greater or less duration, and does not embrace a mere transient or trivial use. *Society of Cincinnati v. Exeter,* 92 N.H. 348, 31 A. 2d 52; *Lacy v. Green,* 84 Pa. 514. A building is occupied when it is put to a practical and substantial use for the purpose for which it is designed. 67 C.J.S. 84.

When the plaintiff's testimony on this phase of the litigation is interpreted most favorably to him, it tends to show the matters set forth in the next paragraph.

The building was in process of construction at all times between 26 January, 1950, when the policy was issued, and 5 May, 1950, when the fire occurred. It was not used in any way during that entire period except for several hours on the night of 29 April, 1950, when the plaintiff gratuitously permitted Russell Twiford, a college student, to conduct a dance, which was attended by approximately 200 persons, in the portion of the building designed for future use as the dining room. On that

occasion the workmen cleared the floor for dancing by pushing "the lumber, the nail kegs, and different things" out of the room.

As this evidence is indicatory of the fact that the building was never put to anything more than a mere transient or trivial use, it is sufficient to show that the building had not been occupied either in whole or in part by the plaintiff or anyone acting for or under him at any time before the fire.

To be sure, the defendant offered or elicited other testimony in sharp conflict with that summarized above. Such other evidence must be ignored, however, in determining the legal sufficiency of the plaintiff's testimony to overcome a motion for a compulsory nonsuit or to withstand a prayer for a directed verdict in defendant's favor. *Register v. Gibbs,* 233 N.C. 456, 64 S.E. 2d 280.

The defendant's remaining assignments of error are untenable. None of them require discussion except those challenging the exclusion of the testimony of the defendant's witness, Mrs. Brantley McCoy, concerning a statement made to her by the defendant's agent, Jerry Wright, and the subsequent action taken by the Southern Loan and Insurance Company. This evidence was rightly rejected in the absence of any allegation that the policy had been canceled or terminated otherwise than by the completion or occupation of the building. *Aetna Insurance Co. v. Kennedy,* 301 U.S. 389, 57 S. Ct. 809, 81 L. Ed. 1177.

The trial and judgment will be upheld, for there is in law

No error.

VALENTINE, J., took no part in the consideration or decision of this case.