State v. Montieth

Reversed.

Judges BRITT and VAUGHN concur.

STATE OF NORTH CAROLINA v. W. L. MONTIETH

No. 7430SC611

(Filed 6 November 1974)

1. Criminal Law § 66— illegal lineup — independent origin of in-court identification

The *voir dire* evidence supported the trial court's determination that a robbery victim's in-court identification of defendant was of independent origin and not tainted by an illegal pretrial lineup identification where the victim testified that the robbery occurred at a store during daylight, that visibility in the store was good, that he and defendant were within three or four feet of the glass front of the store, that he and defendant stood looking at each other for a couple of minutes while they were facing each other eight or ten feet apart, that he carefully studied the robber's features, and that he based his identification entirely on the facial features he observed at the time of the robbery.

2. Criminal Law §§ 114, 168— statement that State's evidence "does show" — harmless error

The trial court's slip of the tongue in stating that the State further offered evidence tending to show "and does show" did not constitute prejudicial error where the court stated in other portions of the charge that the State had offered evidence tending to show and which the State "contends does show," and where the court charged that it was for the jury to determine what the evidence does show.

APPEAL by defendant from *Jackson, Judge,* April 1974 Session of Superior Court held in CHEROKEE County.

Criminal prosecution for armed robbery. Defendant was found guilty, and from judgment imposing a prison sentence, appealed.

*Attorney General James H. Carson, Jr. by Assistant Attorney General William F. O'Connell for the State.*

*C. E. Hyde for defendant appellant.*

PARKER, Judge.

[1] On the afternoon of 1 December 1973 Olin McAllister, operator of a country store in Cherokee County, N. C., was

robbed by a man carrying a high-powered rifle. A few hours later defendant was arrested at his home in Georgia and was charged with the robbery. About 9:00 p.m. on the same date he was placed in a lineup with three other men at the police station in McCaysville, Georgia. Defendant did not have counsel at the time and had not been advised of his right to counsel or of any other rights. At the lineup McAllister identified defendant as the robber. At defendant's trial on 1 April 1974 defendant's counsel in apt time moved to suppress McAllister's testimony, and the denial of this motion is the subject of defendant's first assignment of error.

"It is well established that the primary illegality of an out-of-court identification will render inadmissible the in-court identification unless it is first determined on voir dire that the in-court identification is of independent origin." *State v. Henderson,* 285 N.C. 1, 203 S.E. 2d 10 (1974). Here, prior to admitting the in-court identification testimony of McAllister, the trial judge held a voir dire hearing on defendant's motion to suppress. On completion of this hearing the judge made findings that "the identification of the defendant by the witness is based upon witness McAllister having seen the defendant in the store at which time he observed the defendant for a couple of minutes," and that "from evidence clear and convicting [sic], there was no impermissibly suggestive procedures to aid or taint the witness's identification of the defendant and the witness McAllister's in-court identification is independent in origin and is admissible in evidence."

Where such findings are supported by competent evidence, they are conclusive on appellate courts. *State v. Tuggle,* 284 N.C. 515, 201 S.E. 2d 884 (1974). Here, there was ample competent evidence to support the court's finding that McAllister's identification was independent in origin of anything which occurred at the lineup and that it was based on his having seen the defendant in the store. The robbery occurred during daylight. McAllister testified at the voir dire hearing that visibility in the store was good, that he and defendant were within three or four feet of the glass front of the store, that the sun shines in there in the evening, and that he and defendant stood looking at each other for a couple of minutes while they were facing each other eight or ten feet apart. He also testified that he based his identification of the defendant as the man who robbed him entirely on the facial features he observed at the time of the robbery. He explained that he had had the experience once before

of being present as a customer when a business was robbed and that this experience was the reason why he "spent so much time studying this man's features, to try to determine his nervous or mental condition." The trial court's finding that the witness's identification was independent of anything which occurred at the lineup being supported by competent evidence, the witness's in-court identification testimony was competent and admissible despite any primary illegality in the lineup procedures, and defendant's first assignment of error is overruled. *State v. Bass,* 280 N.C. 435, 186 S.E. 2d 384 (1972).

[2]   In summarizing the State's evidence in order to explain the application of the law thereto, the record indicates that at one point the judge said:

> "Now, the State further offered evidence tending to show *and does show,* that when Sheriff Stalcup was notified it was around 4:30, and it took the Sheriff 10 to 15 minutes to get to the store." (Emphasis added.)

Defendant contends the italicized words amount to an expression of opinion on the evidence in violation of G.S. 1-180. If so, the judge's slip of the tongue was certainly not such as to warrant a new trial. The record shows that in other portions of the charge, and in particular in the portion of the charge in which the judge summarized the State's evidence dealing with the events occurring during the actual commission of the robbery, the judge was careful to state that the State had offered evidence tending to show, and which the State *"contends* does show," certain occurrences. (Emphasis added.) Moreover, at the conclusion of his summary of the State's evidence, the judge instructed the jury:

> "Now, members of the jury, that is what some of the evidence for the State tends to show. What it does show, if anything, is a matter entirely for you to determine."

It is simply not possible that the jury's verdict could have been influenced by the judge's single slip of the tongue now complained of, and defendant's assignment of error addressed to this point is overruled.

We have also carefully examined defendant's contentions relating to the remaining assignments of error brought forward on this appeal, and find them without merit. We find defendant's trial free from any prejudicial error.

No error.

Chief Judge BROCK and Judge MARTIN concur.